UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

| | |
|---|---|
| FIRST LUTHERAN CHURCH, | Civil No. 18-954 (JRT/KMM) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTION TO DISMISS** |
| THE CITY OF ST. PAUL, | |
| Defendant. | |

---

Thomas P. Kane and Evan Berquist, **COZEN O'CONNOR**, 33 South Sixth Street, Suite 3800, Minneapolis, MN 55402, for plaintiff.

Portia M. Hampton-Flowers, **ST. PAUL CITY ATTORNEY**, 15 West Kellogg Boulevard, Suite 750, St. Paul, MN 55102, for defendant.

First Lutheran Church brings this action against the City of St. Paul, Minnesota, alleging violations of its rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), as well as its rights under the constitutions of Minnesota and the United States. First Lutheran claims that the City violated its rights when the City imposed fourteen conditions as part of a Determination of Similar Use regarding First Lutheran's partnership with a nonprofit dayshelter that operates out of First Lutheran's basement. One of those conditions required that a sign be posted restricting after-hours use of First Lutheran's property so that the City could enforce trespassing laws, even though First Lutheran wants to permit such after-hours use of its property. Another condition limited the number of guests to twenty per day.

The Court granted First Lutheran's motion for a preliminary injunction in part, enjoining the City from enforcing the sign-posting requirement and the twenty-person limit. Before the parties completed briefing on First Lutheran's motion for a preliminary injunction, the City filed a motion to dismiss. Because First Lutheran plausibly states a claim for relief under multiple legal theories, the Court will deny the City's motion in part. The Court will, however, dismiss First Lutheran's substantive due-process claim without prejudice.

## BACKGROUND

I.  **FACTUAL BACKGROUND**

First Lutheran Church is located in a residential area of St. Paul, Minnesota. (*See* Am. Compl. ¶¶ 1, 12, May 17, 2018, Docket No. 24.) Supporting those in need has always been an important part of First Lutheran's religious identity. (*Id.* ¶¶ 9-11, 13.) Over the last decade, First Lutheran has established several programs aimed at fulfilling its religious mission to alleviate poverty and homelessness. (*Id.* ¶¶ 14-23.) For example, First Lutheran served breakfast to over 300 people each Sunday over a three-year span. (*Id.* ¶ 17.) It hosts a "Home(full) Camp" where it brings the unhoused individuals to a camp for a week "to provide a sanctuary for rest from the stressors of homelessness." (*Id.* ¶ 21.) First Lutheran also established a "Wellness Center" on its property where its volunteers and partners provide free services to approximately 80-150 people one evening per week, including: blood pressure checks and health assessments; mental-health counseling; holistic therapy; and a hot meal. (*Id.* ¶ 18.) First Lutheran also has a "Ministering Angels"

program that operates on First Lutheran's property and provides gently used clothing, blankets, and housewares to those in need. (*Id.*)

Listening House of St. Paul is a nonprofit dayshelter and community center that "focuses on providing hospitality and practical assistance to the disadvantaged, homeless, or lonely." (*Id.* ¶ 27.) For over 33 years, Listening House operated in downtown St. Paul, approximately half a mile from City Hall. (*See id.* ¶ 30.) In 2016, First Lutheran learned that Listening House needed a new location, and in early 2017, First Lutheran agreed to allow Listening House to operate out of First Lutheran's basement. (*Id.* ¶¶ 31, 36.)

Both saw the partnership as a natural match. First Lutheran saw Listening House's "commitment to helping those in need with practical and holistic assistance" as "precisely what First Lutheran had been attempting to provide its community for decades." (*Id.* ¶ 32.) Their partnership would enable First Lutheran to expand its ministries and services beyond the neighborhood and into greater St. Paul. (*Id.* ¶ 33.) For example, Listening House's established reputation as a welcoming dayshelter for the homeless reduced the need for First Lutheran to separately provide similar services to the neighborhood and broader community. (*See id.* ¶¶ 32-36.)

Before Listening House opened its doors at its new location, it sought guidance from the City. (*Id.* ¶ 37.) Listening House was told that First Lutheran needed to apply for a Determination of Similar Use. (*Id.*) First Lutheran alleges that, before its partnership with Listening House, it "had not had to apply for a Determination of Similar Use for any other tenant that serves the poor, homeless and hungry." (*Id.* ¶ 38; *see also id.* ¶ 24.)

In February 2017, First Lutheran applied for a Determination of Similar Use. (*Id.* ¶ 39, Ex. B.) The following month, a City inspector approved First Lutheran's application. (*Id.* ¶ 43, Ex. C at 3.) The Determination stated that Listening House's use of First Lutheran's basement would be "similar in character" to "the uses provided by First Lutheran," such as its Wellness Center and Ministering Angels, and that Listening House's use would be "similar to other accessory church-related programs." (*Id.* at 2.) The Determination relied, in part, on a 2004 application by St. Mary's church to hold a yoga class on its church property. (*See id.*) The only three conditions the City imposed were: (1) that Listening House be "limited to uses that are low profile, generate limited traffic, are compatible with the church's presence in the community, and have the potential to complement the activities of the church," (2) that Listening House "meet the standards and conditions for 'home occupation' as listed in" the City's Zoning Code, and (3) that First Lutheran work with Listening House to prevent traffic and congestion on neighborhood streets. (*Id.*) Listening House then moved into First Lutheran's basement and opened its doors on June 5, 2017. (Am. Compl. ¶ 47.)

The partnership appeared to be the natural match that both had hoped for. Listening House serves approximately 50-60 guests per day. *See* St. Paul City Council Hr'g at 1:16:57-1:17:30 (Dec. 6, 2017).[1] Many regular guests at Listening House became First

---

[1] Available at http://stpaul.granicus.com/MediaPlayer.php?view_id=37&clip_id=3255. Although "[a] court generally may not consider materials outside the pleadings when deciding a motion to dismiss for failure to state a claim," a court may "consider 'some materials that are part of the public record.'" *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015) (quoting *Porous*

Lutheran members, and members of First Lutheran's staff and volunteers became Listening House volunteers. (*See* Am. Compl. ¶¶ 97-100, 105.) Additionally, "First Lutheran's intern pastor spends several hours each Thursday being a pastoral presence at Listening House." (*Id.* ¶ 104.)

Notwithstanding the benefits of this partnership, acrimony quickly brewed nearby. According to First Lutheran, "a small group of neighbors made it clear that they were opposed to Listening House and its visitors' presence" in the neighborhood. (*Id.* ¶ 48.) Neighbors complained to the City about increased foot traffic, people sleeping outside, and an increase in petty offenses such as littering, public intoxication, and urination. (*Id.* ¶ 49; *id.* Ex. F.) Neighbors documented their complaints by, in part, taking photographs of people. (*Id.* ¶ 50.)

## II. PROCEDURAL BACKGROUND

The St. Paul Zoning Code requires that any appeal of "a decision of the planning or zoning administrator" be filed within ten days of that decision. St. Paul Zoning Code § 61.701(c). On July 3, 2017 – less than a month after Listening House opened and more than three months after the City's approval of First Lutheran's application for Determination of Similar Use – the City informed First Lutheran that it was inviting appeals of the Determination of Similar Use. (*Id.* ¶ 53.) First Lutheran alleges that "[p]roviding notice of a right to appeal a determination of similar use is not required under

---

*Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)). The video of the St. Paul City Council's meeting is unquestionably part of the public record.

- 5 -

statutes, nor does the Zoning Administrator have a written policy to do so." (*Id.* ¶ 54.) After the City's invitation, several of First Lutheran's neighbors appealed the Determination to the Zoning Committee. (*Id.* ¶¶ 56-60.) After a public hearing – and after the neighbors, the City, First Lutheran, and Listening House tried to settle their disagreements – the Zoning Committee recommended granting the neighbors' appeal, which would have shut down Listening House. (*Id.* ¶¶ 64-70.)

Listening House objected to the Committee's recommendation to the Planning Commission. (*Id.* ¶ 71.) The Commission adopted a middle-of-the-road approach. It voted to deny the neighbors' appeal in part and modify the Determination of Similar Use by adding eleven conditions. (*Id.* ¶¶ 72-73.) The fourteen total conditions imposed were:

> 1. The nonprofit tenant is limited to uses that are low profile, generate limited traffic, are compatible with the church's presence in the community, and have the potential to complement the activities of the church.
>
> 2. Tenants shall meet the standards and conditions for "home occupation" as listed in Section 65.141 b, c, g and h of the Zoning Code, . . . .
>
>> (b) A home occupation shall not involve the conduct of a general retail or wholesale business, a manufacturing business, a commercial food service requiring a license, a limousine business or auto service or repair.
>>
>> (c) A home occupation shall be carried on whole[ly] within the main building. No occupation shall be allowed in detached accessory structures or garages.
>>
>> (g) There shall be no exterior storage of equipment, supplies, or overweight commercial vehicles, nor parking of more than one (1) business car, pickup truck or small van, nor any additional vehicles except one business car, pickup truck

or small van, nor any additional vehicles except those for permitted employees associated with the home business.

    (h) There shall be no detriments to the residential character of the neighborhood due to noise, odor, smoke dust, gas, heat, glare, vibration, electrical interference, traffic congestion, number of deliveries, hours of operation, or any other annoyance resulting from the home occupation.

3. The church shall work with Listening House to prevent scheduling of multiple events that, taken together, would generate considerable traffic and congest neighborhood streets.

4. Hours of operation shall be limited to 9:00 AM to 5:00 PM.

5. Listening House will ensure that guests have left the area after Listening House has closed and will provide bus fares to its guests. Listening House staff must be on-site for two hours before and two hours after the times guests are served at the facility.

6. Listening House will not allow the consumption of alcohol or controlled substances anywhere on the First Lutheran Church properties.

7. Listening House will call emergency services when a guest is engaged in behavior that is harmful to self or others.

8. Listening House will give notice on a shared Google site of serious incidents observed that involve their guests.

9. No outdoor patio may exist anywhere on church grounds during Listening House's tenancy.

10. A sign must be posted in a plainly visible location to restrict after-hours use of the church grounds so as to aid in the enforcement of trespassing violations by Listening House guests or other persons when Listening House is closed.

11. Listening House will attend community policing meetings as invited by the Saint Paul Police Department.

> 12. Listening House will review on a daily basis their own camera footage and an online log maintained by neighbors in order to identify issues of concern and potential intervention.
>
> 13. Listening House will post guest policies regarding "good neighbor" expectations and consequences, including suspension or barring from Listening House and the church properties. Such policies must be readily visible to guests. Also, the policies must be provided to neighbors and the Zoning Administrator upon request.
>
> 14. The number of guests will generally be limited to 20 per day. . . .

(*Id.* ¶ 73, Ex. D at 4-5.) In support of the additional conditions imposed, the Commission made two findings. First, that Listening House "has not operated like a home occupation because of its detrimental effect on the neighborhood, with an increase in issues such as littering, public urination, and sleeping in outdoor public and private spaces causing such detriment, including during hours when the facility is closed." (*Id.* at 3.) Second, the City found that Listening House "has not been compatible with the church's presence in the community." (*Id.*) First Lutheran alleges that "the Planning Commission did not rely on any study or evidentiary support that the conditions would address in any way the issues the neighbors complained of" and that "the record shows the conditions were mainly adopted based on the neighbors' suggestions." (Am. Compl. ¶ 74.)

Both Listening House and the neighbors appealed the Planning Commission's decision to the City Council. (*Id.* ¶¶ 76, 78.) During the City Council's public hearing in December 2017, City Planner Bill Dermody was asked about the Planning Commission's basis for imposing the twenty-person limit. St. Paul City Council Hr'g at 1:10:20. He stated:

> We do have some guidance from the previous approval of another church with the yoga use where that use was limited to ten persons per day to make it act like an accessory use and be clearly incidental. On that site, ten per day has worked. We haven't had issues or complaints at that site. And so, if ten worked on that site, hopefully twenty would work on this, on this site.

*Id.* at 1:10:30-1:10:55. The City Council denied both appeals and passed Resolution 18-145, which adopted the Planning Commission's recommendation. (Am. Compl. ¶¶ 83-85; *see also id.* ¶ 85, Ex. F.) Resolution 18-145 is the City's final decision on the matter. (*Id.* ¶ 84.) Since the City's enactment of Resolution 18-145, a City inspector has twice visited Listening House to ensure compliance with Resolution 18-145. (*Id.* ¶ 90.)

First Lutheran brings this action, alleging: violations of its rights under RLUIPA (Counts I & II); violations of its rights to free exercise, free speech, and free assembly under the First Amendment (Counts V-VII); violations of its rights to equal protection and due process under the United States Constitution (Count III); and a violation of the right of conscience under the Minnesota Constitution (Count IV). (*Id.* ¶¶ 115-186.) First Lutheran also seeks judicial review of Resolution 18-145 pursuant to Minnesota Statute § 462.361 (Count VIII). (*Id.* ¶¶ 187-192.)

The City moves to dismiss the entire action on standing and ripeness grounds. The City also moves to dismiss each of First Lutheran's claims for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6).

## DISCUSSION

## I.     STANDARD OF REVIEW

In reviewing a motion to dismiss, the Court views a complaint in "the light most favorable to the nonmoving party." *Longaker v. Bos. Sci. Corp.*, 872 F. Supp. 2d 816, 819 (D. Minn. 2012). The Court considers all facts alleged in the complaint as true to determine whether the complaint states a "claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility[,]'" and therefore must be dismissed. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Although the Court accepts the complaint's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Therefore, to survive a motion to dismiss, a complaint must provide more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

## II.    THE CITY'S MOTION TO DISMISS

On July 2, the Court granted First Lutheran's motion for a preliminary injunction in part. *First Lutheran Church v. City of St. Paul*, No. 18-954, 2018 WL 3233146, at *15 (D. Minn. July 2, 2018). Before the parties completed briefing on the preliminary-injunction

motion, the City filed a motion to dismiss. (Def.'s Mot. to Dismiss, May 2, 2018, Docket No. 16.) In support of its motion to dismiss, the City repeats many of the arguments it made in opposition to First Lutheran's preliminary-injunction motion.

### A. Justiciability

The City moves to dismiss the entire action for lack of standing and ripeness. But the Court already found that First Lutheran has standing and that this action is ripe. *First Lutheran Church*, 2018 WL 3233146, at *5-6. The Court will therefore deny the City's motion to dismiss on standing and ripeness grounds.

### B. RLUIPA (Counts I-II)

The City moves to dismiss First Lutheran's RLUIPA claims for failure to state a claim. The Court already found that First Lutheran is likely to prevail on the merits of its substantial-burden RLUIPA claim. *Id.* at *7-10. And although the Court found that First Lutheran had not shown that it was likely to prevail on the merits of its equal-terms claim under RLUIPA, *id.* at *10-11, First Lutheran alleges sufficient facts to survive a motion to dismiss. First Lutheran alleges that certain restrictions contained in Resolution 18-145 do not apply to Metropolitan State University, Dayton's Bluff Library, or The Goat Coffee House, which are all within the same neighborhood and zoning district. (Am. Compl. ¶ 93.) First Lutheran also alleges that the City invited neighbors to appeal its Determination of Similar Use over three months after issuing it (substantially beyond the ten-day window provided in the Zoning Code) and that the City has never before done anything like that. (*See id.* ¶¶ 53-56.) These allegations plausibly state a claim for relief under RLUIPA's equal-terms provision. *See Church v. City of St. Michael*, 205 F. Supp. 3d 1014, 1036 (D.

Minn. 2016). The Court will therefore deny the City's motion to dismiss First Lutheran's RLUIPA's claims.

### C. First Amendment (Counts V-VII)

The City moves to dismiss First Lutheran's First Amendment claims for failure to state a claim. The Court already found that First Lutheran was likely to prevail on its free-speech claim. *First Lutheran Church*, 2018 WL 3233146, at *12-14. And although the Court found that First Lutheran had not shown that it was likely to prevail on its free-exercise claim, the Court noted that First Lutheran could plausibly develop this claim on a more complete record. *Id.* at *11-12. Because First Lutheran plausibly states a claim for relief under both the Free Speech and Free Exercise Clauses, the Court will allow First Lutheran's free-assembly claim to similarly proceed forward. *See id.* at *12. The Court will therefore deny the City's motion to dismiss First Lutheran's First Amendment claims.

### D. Fourteenth Amendment (Count III)

The City moves to dismiss First Lutheran's Fourteenth Amendment claim for failure to state a claim. Count III of First Lutheran's Amended Complaint embraces two distinct legal claims: an equal-protection claim alleging that the City treated First Lutheran differently than others similarly situated, and a due-process claim. (Am. Compl. ¶¶ 140-141.) The Court will address each in turn.

#### 1. Equal Protection

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."

*City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Proof of "discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). "Relevant evidence includes, among other things, the historical background of the decision under challenge, the specific series of events leading to the enactment or official policy in question, and the legislative or administrative history, including contemporaneous statements made by members of the decisionmaking body." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 540 (1993).

Here, First Lutheran has alleged facts that support an inference of discriminatory purpose or intent. First Lutheran alleges that certain restrictions contained in Resolution 18-145 do not apply to Metropolitan State University, Dayton's Bluff Library, or The Goat Coffee House, which are within the same neighborhood and zoning district. (Am. Compl. ¶ 93.) And, First Lutheran alleges that the City has never before invited appeals of a Determination of Similar Use over three months after issuing it (substantially beyond the ten-day window provided in the Zoning Code). (*See id.* ¶¶ 53-56.) The Court will therefore deny the City's motion to dismiss First Lutheran's equal-protection claim. *See First Lutheran Church*, 2018 WL 3233146, at *11 (noting that First Lutheran's RLUIPA equal-terms claim alleges "troubling" facts about how the City allowed the neighbors to appeal the City's Determination of Similar Use); *see also id.* at *12 (noting that First Lutheran might be able to present evidence of religious animus).

### 2. Due Process

"Due process claims involving local land use decisions must demonstrate the 'government action complained of is truly irrational, that is something more than . . . arbitrary, capricious, or in violation of state law.'" *Koscielski v. City of Minneapolis*, 435 F.3d 898, 902 (8th Cir. 2006) (omission in original) (quoting *Anderson v. Douglas Cty.*, 4 F.3d 574, 577 (8th Cir. 1993)). "The action must therefore be so egregious or extraordinary as to shock the conscience." *Id.* "An example would be attempting to apply a zoning ordinance only to persons whose names begin with a letter in the first half of the alphabet." *Chesterfield Dev. Corp. v. City of Chesterfield*, 963 F.2d 1102, 1104 (8th Cir. 1992). Even "[a] bad-faith violation of state law remains only a violation of state law." *Id.* at 1105.

Here, First Lutheran has not alleged facts sufficient to show that Resolution 18-145 is truly irrational or shocks the conscience. First Lutheran alleges that Resolution 18-145 contains four "irrational conditions": the 20-person limit, the sign-posting requirement, the incident-reporting requirement,[2] and the patio ban. (Am. Compl. ¶ 126.) But these four conditions do not rise to the level of substantive due-process violations akin to selective application based on the spelling of one's name. *See Chesterfield*, 963 F.2d at 1104. The conditions bear a sufficiently minimal relationship to the City's interests to avoid the strong medicine of substantive due process. *See* St. Paul Legis. Code § 60.103;

---

[2] The Court already found that the incident-reporting requirement does not apply to First Lutheran. *First Lutheran Church*, 2018 WL 3233146, at *14 n.6.

*First Lutheran Church*, 2018 WL 3233146, at *9-10. The Court will therefore grant the City's motion with respect to First Lutheran's substantive due-process claim.[3]

### E. Right of Conscience (Count IV)

The City moves to dismiss First Lutheran's Right of Conscience claim for failure to state a claim. The Minnesota Constitution provides:

> The right of every man to worship God according to the dictates of his own conscience shall never be infringed; nor shall any man be compelled to attend, erect or support any place of worship, or to maintain any religious or ecclesiastical ministry, against his consent; nor shall any control of or interference with the rights of conscience be permitted . . . .

Minn. Const. art. I, § 16. "[T]his provision . . . afford[s] greater protection for religious liberties against governmental action than the first amendment of the federal constitution." *Hill-Murray Fed'n of Teachers, St. Paul, Minn. v. Hill-Murray High Sch., Maplewood, Minn.*, 487 N.W.2d 857, 864 (Minn. 1992). The City concedes that First Lutheran's "claims under the freedom of conscience clause of the Minnesota Constitution are supported by the same facts and allegations asserted in support of [its] claims under RLUIPA and the First Amendment." (Def.'s Mem. Supp. Mot. to Dismiss at 36, May 2, 2018, Docket No. 18.) Because the Court will deny the City's motion with respect to First

---

[3] The Court's conclusion that First Lutheran fails to plausibly allege that Resolution 18-145 violates First Lutheran's substantive due process would ordinarily mean that the Court would dismiss that claim with prejudice. But First Lutheran also alleges that "Resolution 18-145 contains conditions that are unconstitutionally vague." (Am. Compl. ¶ 141.) First Lutheran fails to identify which conditions it thinks are unconstitutionally vague, or any specific words or terms in Resolution 18-145 that it thinks renders the Resolution or any condition therein unconstitutionally vague. Accordingly, the Court will dismiss First Lutheran's substantive due-process claim without prejudice to the extent that First Lutheran could identify with greater particularity the portion(s) of Resolution 18-145 that it contends are unconstitutionally vague.

Lutheran's RLUIPA and First Amendment claims, the Court will deny the City's motion to dismiss First Lutheran's claim under the Minnesota Constitution's Right of Conscience.[4]

### F. Judicial Review of Zoning Decision (Count VIII)

The City moves to dismiss First Lutheran's claim for judicial review of Resolution 18-145 for failure to state a claim. Minnesota law allows "[a]ny person aggrieved by an ordinance, rule, regulation, decision or order of a governing body or board of adjustments and appeals . . . [to] have such ordinance, rule, regulation, decision or order, reviewed by an appropriate remedy." Minn. Stat. § 462.361.[5] In reviewing a city's zoning decisions, the question is "whether the municipality's action in the particular case was reasonable." *VanLandschoot v. City of Mendota Heights*, 336 N.W.2d 503, 508 (Minn. 1983). A reviewing court "examine[s] the municipality's action to ascertain whether it was arbitrary and capricious, or whether the reasons assigned by the governing body do not have 'the slightest validity' or bearing on the general welfare of the immediate area, or whether the reasons given by the body were legally sufficient and had a factual basis." *Id.* (citation omitted) (quoting *White Bear Docking & Storage, Inc. v. City of White Bear Lake*, 324 N.W.2d 174, 176 (Minn. 1982)). The standard for a claim under Minn. Stat. § 462.361 is less onerous for a plaintiff than the standard for a substantive due-process claim.

---

[4] The parties do not address – and so the Court expresses no view on – whether the Minnesota Constitution's right of conscience is, like the Free Exercise Clause of the First Amendment, "implicated only when government action is motivated by religion or religious-related reasons, irrespective of any effects that the government action might have on religious exercise." *First Lutheran Church*, 2018 WL 3233146, at *11.

[5] The City's zoning code was enacted pursuant to Minn. Stat. § 462.351. St. Paul Zoning Code § 60.102.

*Koscielski*, 435 F.3d at 902; *Cont'l Prop. Grp., Inc. v. City of Minneapolis*, No. A10-1072, 2011 WL 1642510, at *6 n.2 (Minn. Ct. App. May 3, 2011).

Here, First Lutheran alleges sufficient facts to state a claim under Minnesota Statute § 462.361. First Lutheran alleges that "Resolution 18-145 resulted from an appeal process that was untimely and contrary to law," that "[b]ecause the initial appeal was void as untimely, all decisions resulting from that process are invalid and ineffective," and that even if the appeal process was valid, Resolution 18-145 is "arbitrary," "capricious, unreasonable, irrational," and "unsupported by the record." (Am. Compl. ¶¶ 190-191.) The City invited appeals well after the ten-day window provided in the Zoning Code. (*See* Am. Compl. ¶¶ 53-70.) It is plausible that the City's process – and its deviation from the City Code – was unreasonable, arbitrary, or capricious because the intent of the City Code's ten-day window for appeals is (presumably) to avoid undermining reliance interests generated by the grant of a Determination of Similar Use. *See Citizens Advocating Responsible Dev. v. Kandiyohi Cty. Bd. of Comm'rs*, 713 N.W.2d 817, 832 (Minn. 2006) (holding that a decision is "arbitrary and capricious if [an] agency . . . relie[s] on factors not intended by the legislature"). Moreover, it is plausible that some conditions in Resolution 18-145, such as the 20-person limit and the patio ban, are also arbitrary and capricious. The Court already found that the 20-person limit is unlikely to further the City's interests, *First Lutheran Church*, 2018 WL 3233146, at *9, and the City has not pointed to an explanation or factual basis for the patio ban, *RDNT, LLC v. City of Bloomington*, 861 N.W.2d 71, 75-76 (Minn. 2015). The City's arguments (and any evidence in support thereof) are better suited for trial or a motion for summary judgment. The Court will

therefore deny the City's motion to dismiss First Lutheran's claim for judicial review pursuant to § 462.361.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss [Docket No. 16] is **GRANTED IN PART and DENIED IN PART** as follows:

1. The motion is **GRANTED** with respect to First Lutheran's substantive due-process claim. First Lutheran's substantive due-process claim is **DISMISSED without prejudice**.

2. The motion is **DENIED** in all other respects.

DATED: August 8, 2018           _____s/John R. Tunheim_____
at Minneapolis, Minnesota.           JOHN R. TUNHEIM
                                                         Chief Judge
                                      United States District Court