# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

First Lutheran Church,

                    Plaintiff,

v.

The City of St. Paul,

                    Defendant.

Case No. 18-cv-954-JRT-KMM

**ORDER**

---

       This matter is before the court on Plaintiff First Lutheran Church's ("First Lutheran") post-settlement motion for attorney fees. (ECF No. 78.) The Defendant, the City of St. Paul ("the City"), opposes First Lutheran's motion. For the reasons stated below, First Lutheran's motion is GRANTED in part.

## I.    Factual Background

       This litigation arises out of a dispute between First Lutheran and the City regarding First Lutheran's use of its property. Specifically, First Lutheran challenged the City's Resolution 18-145, which limited how a nonprofit, Listening House, could operate out of First Lutheran's property, arguing that it violated the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA).[1] Listening House is a day shelter and community center that serves the homeless and other vulnerable populations in the Twin Cities area. (Amend. Compl. ¶ 27.) First Lutheran began a partnership with Listening House by offering space in its basement out of which Listening House could run its programming. (*Id.* at ¶ 31–32.) The City informed First Lutheran and Listening House that they would need to apply for a Determination of Similar Use in order to operate as planned in the space. (*Id.* at ¶ 37.) The City issued its Determination, which required First Lutheran and Listening House to meet the standards for "home occupation" as listed in the zoning code,

---

[1] Listening House filed a similar lawsuit in state court, and the two parties regularly collaborated during the lawsuits. (Amend. Compl. ¶ 86.)

including three additional conditions. (*Id.* at ¶ 43–45.) After experiencing significant pushback from the community about Listening House's work at the church, the City's Planning Commission modified the Determination of Similar Use and added eleven more conditions limiting Listening House's use of the space. (*Id.* at ¶ 73.) This Determination and its fourteen total conditions, with minor modifications, became Resolution 18-145. (*Id.* at ¶ 85.)

While Listening House filed suit in state court, First Lutheran sought a preliminary injunction in federal court to prevent the City from enforcing Resolution 18-145. (ECF No. 5.) The City opposed the injunction and brought a motion to dismiss the complaint. (ECF No. 16.) First Lutheran was largely successful in this first round of litigation. The Court granted First Lutheran's motion for preliminary injunction in part in July 2018, prohibiting the City from enforcing two of the fourteen conditions. (ECF No. 37.) In August 2018, the Court denied the City's motion to dismiss nearly in its entirety, dismissing only a substantive due process claim. (ECF No. 39.)

Following the injunction, extensive settlement negotiations took place. In July 2018, several proposals were exchanged for the resolution of the lawsuit. Listening House and First Lutheran send a final coordinated settlement proposal. (Hayes Aff. Ex. 3.) The letter specifically represented that they were not challenging the Determination of Similar Use, but instead were challenging those conditions that Listening House and First Lutheran deemed inconsistent with that determination. (*Id.*) They also agreed to accept the removal and modification of several conditions as described in the City's previous offer. (*Id.*) Similarly, by September, the City had almost finalized a settlement with Listening House in the parallel state court case, allowing them to continue doing their work with the homeless in the basement of First Lutheran. (*Id.*, Ex. 4, p.1.) And the City indicated a willingness to revise or rescind all of the challenged conditions. (*Id.* at p. 2.)

Despite the substantial progress made toward a negotiated settlement of the remaining areas in dispute, talks soon broke down and a pretrial conference was scheduled. At that conference, both sides expressed an interest in prioritizing settlement over the costs of litigation. (September 11, 2018 Minutes, ECF No. 46 ("The Court and counsel are all in agreement that the best outcome of this litigation would be a prompt settlement, and would likely be settlement ahead of further work on discovery.").) This was particularly important in light of the not-for-profit status

of both parties. The Court scheduled a settlement conference for early January, the first available date that worked for all parties. The City wanted to stay the proceedings until that settlement conference. (Hayes Aff. Ex. 4.) First Lutheran, however, quickly took an approach directly at odds with its expressed interest in settlement.

Despite its stated commitment to prioritizing settlement, First Lutheran's counsel remained focused on litigation, and in October 2018 filed a motion to amend its complaint reflecting a radically changed position on the Home Occupation Status issue. Specifically, where before First Lutheran had only challenged the conditions the City had placed on First Lutheran and Listening House rather than the procedural vehicle used by the City, now First Lutheran contested the City's use of the home occupation standard at all in this case. (ECF No. 51.) First Lutheran, surprisingly, also noticed ten depositions for the middle of November 2018, including a deposition of an Assistant City Attorney.

Originally, the Court had declined to formally stay the litigation in its entirety, though it had strongly encouraged parties to focus primarily on preparing for settlement rather than on discovery. However, as detailed above, despite agreeing with this idea in theory, counsel for First Lutheran instead dove headfirst into costly discovery and motion practice. Concerned that such extensive discovery undertaken so close to a settlement conference would undermine those efforts, this Court formally stayed discovery until after the conference took place in early January 2019. (ECF No. 68.)

As hoped for, a successful settlement was negotiated at the January settlement conference. Ultimately, that settlement agreement did not embrace First Lutheran's newer opposition to the Determination of Similar Use, which remains in effect. The parties also did not agree on attorneys' fees during the settlement, and instead opted to bring a motion before this Court.

## II.    Analysis

The City does not dispute First Lutheran's motion for fees in its entirety. Rather, the City argues that First Lutheran is not entitled to its full request of nearly $400,000. First, the City believes that settlement was possible in July 2018, and therefore most work done after this point was unnecessary. Second, the City argues that First Lutheran should not be permitted to collect any fees for its time spent

drafting an Interim Fee Petition that it ultimately did not file. The Court agrees with the City in substantial part.

## A. Standard

Prevailing parties in RLUIPA claims may bring a motion to recover attorneys' fees under 42 U.S.C. § 1988(b). Plaintiffs are considered prevailing parties for the purposes of § 1988(b) "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir. 1978)) (internal quotation marks omitted). Because the purpose of § 1988(b) is to promote access the courts for individuals with civil rights claims, prevailing plaintiffs should ordinarily be permitted to recover attorneys' fees. *Id.* at 429. However, "[t]his is a generous formulation that brings the plaintiff only across the statutory threshold. It remains for the district court to determine what fee is 'reasonable.'" *Id.* at 433.

The starting point for determining what amount is reasonable is to multiply the number of hours reasonably expended on the litigation by a reasonable hourly rate. *E.g.*, *id.*; *Miller v. Dugan*, 764 F.3d 826, 830 (8th Cir. 2014). This figure, known as the "lodestar," equals a rough approximate of what a prevailing attorney in a comparable case would receive from a paying client. *E.g.*, *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010). Once the lodestar is obtained, the court may further adjust the fee awarded based a number of factors described in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *See Damgaard v. Health*, No. 13-cv-2192 (RHK/JSM), 2015 WL 9860267 at *2 (D. Minn. June 18, 2015). These factors include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and the ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Johnson*, 488 F.2d at 717–19. Additionally, the court may reduce hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.

## B.    Post-July 2018 Work

The Court finds that the majority of the work that occurred between July and the date that the Court stayed discovery was unnecessary, excessive, and did not improve the outcome for First Lutheran, making fees for that work unrecoverable. First Lutheran pursued an aggressive discovery and litigation strategy that hampered the parties' efforts to settle, contradicted the strong interest in settlement it expressed at the pretrial conference, and disregarded the Court's admonition that the parties should focus on negotiations rather than discovery ahead of the settlement conference in January. The plaintiff also abruptly changed its legal theory in the middle of litigation, reversing course on its position that Listening House was governed by the Determination of Similar Use. Instead, in September it adopted the position that First Lutheran and Listening House were not at all subject to the City's Home Occupation standard or the Determination of Similar Use. As a consequence of the radical change in course reflected in those actions and its unnecessary investment in early discovery, First Lutheran accrued significant attorney fees.

Ultimately, however, First Lutheran was not successful in obtaining a result that reversed the City's original Determination of Similar Use—the entire focus of the post July 2018 litigation. Instead, the settlement reached, like the one proposed in July and like the one entered into with Listening House, focused on making the Determination workable for First Lutheran and Listening House. In sum, much of the effort expended by counsel between July and January can be accurately described as "excessive" and "otherwise unnecessary." *Hensley*, 461 U.S. at 434.

Courts may reduce attorney fees based on the success or lack thereof in litigation. The Supreme Court in *Hensley* explained,

> If…a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill. Again, the most critical factor is the degree of success obtained.

*Hensley*, 461 U.S. at 436. Where a court has determined that it may reduce fees due to limited success, the court "may attempt to identify specific hours that should be

eliminated, or it may simply reduce the award to account for the limited success." *Id.* at 436–37.

For the period of August 1, 2018 through November 14, the day that the Court stayed discovery in this matter, First Lutheran originally claimed $61,611.00 in fees. First Lutheran eliminated $5,437.60 in fees from that time period based on its expert Jerome Studer's report, which found those fees to have been duplicative or clerical in nature. (Berquist Decl. Ex. 5, Exs. B, C.)  In total, First Lutheran seeks to collect $56,173.40 in fees from that time period.  However, nearly all of the work performed at that time was focused on advancing the ill-fated second amended complaint and unnecessary discovery efforts.  Rather than identifying each specific hour worked towards the second amended complaint or the discovery efforts, the Court will deny recovery of the entire amount claimed for that time period.  *See Hensley*, 461 U.S. at 436–37.  Therefore, the Court will not permit First Lutheran to collect these fees and reduces First Lutheran's total award by $56,173.40.[2]

## C.    Additional Considerations

The Court has identified two other places it is appropriate to reduce First Lutheran's award of fees.  First, in addition to First Lutheran's expert's review, the Court conducted its own review of the fees claimed and found an additional $2,061.00 in fees that were inappropriate due to either their vagueness or their clerical nature.  *See Johnson*, 488 F.2d at 717 ("It is appropriate to distinguish between legal work, in the strict sense, and…clerical work…and other work which can often be accomplished by

---

[2] The City argues that it made a substantial settlement offer in July 2018, which First Lutheran unreasonably rejected, and therefore the subsequent billing is unrecoverable. A district court may reduce attorneys' fees when a substantial settlement offer was rejected by the party requesting fees.  *See, e.g.*, *Parke v. First Reliance Standard Life Ins. Co.*, 368 F.3d 999, 1012 (8th Cir. 2004); *see also Moriarty v. Svec*, 233 F.3d 955, 967 (7th Cir. 2000) (noting that substantial settlement offers should be considered as a factor for the determination of attorney fees).  A substantial offer is one that "appears to be roughly equal to or more than the total damages recovered by the prevailing party." *Id.*  However, although the Court surmises that the settlement offer was substantial under this rule, it need not decide whether this provides an affirmative basis to reduce First Lutheran's claimed fee award.

non-lawyers…. Its dollar value is not enhanced just because a lawyer does it."); *J.W. ex rel. Tolbert v. Saint Paul Public Schools Independent School Dist. No. 625*, No. 12-cv-1369 (DWF/JSM), 2013 WL 5177471 at *7 (D. Minn. Sept. 13, 2013) (disallowing fees where the entry was too vague for the court to discern what was done).

The Court disallows recovery of the following entries for their vagueness. Specifically, the following entries provide no context to demonstrate what task was completed for the client:

- 1/31/18: "Email from E. Berquist re: draft letter to City Council; email from S. Katkov re: same." ($232.50)
- 2/1/18: "Email from C. Jacobsen with report on City Counsel proceedings." ($77.50)
- 3/7/18: "Email from E. Berquist re: meeting summary." ($155.00)
- 3/14/18: "Email from E. Berquist re: newspaper articles." ($77.50)
- 3/20/18: "Email from E. Berquist re: response to media." ($77.50)

The Court disallows recovery of the following entries due to their clerical nature:

- 4/4/18: "Examined docket 15-cv-1575-DWF-DTS; procured the full text of 4 filings." ($31.00)
- 4/4/18: "Examined four dockets from PACER to obtain memoranda of law filed by S. Diehl in support of his motions for temporary injunctions." ($93.00)
- 4/9/18: "Address summons and address copies to City Attorney." ($395.50)
- 4/24/18: "Courtesy copies to Portia Hampton-Flowers." ($508.50)
- 4/25/18: "Review emails regarding Defendant representation; review amended notice of hearing; exchange emails regarding service and filing." ($88.00)
- 7/13/18: "Conference regarding appeal timing; update firm docket." ($66.00)
- 7/27/18: "Review court docket and status of appeal; review prior emails." ($154.00)
- 1/24/19: "Import expenses to database. FIRST LUTHERAN PROBONO." ($105.00)

Accordingly, the Court further reduces First Lutheran's award by the above amount, $2,061.00.

Finally, the Court reduces First Lutheran's fees by $13,676.00, the amount claimed by First Lutheran for work on an interim fee petition that was never filed. Although First Lutheran claims that this work later helped it avoid additional costs when it prepared its current fee petition, that argument is belied by the fact that just over $11,000.00 was spent on this current fee petition. (Berquist Decl. Ex. 4.) A large portion of this is described as revising the previous memo and performing additional legal research, which indicates to the court that whatever was reused from the interim fee motion was minimal. Thus, permitting First Lutheran to obtain fees for both the interim fee motion that was never filed and this current fee petition would be redundant.

In sum, the Court reduces First Lutheran's claimed fees by $71,910.40. This results in a total fee award of $324,578.96. Given the complexity of this case, the experience of the attorneys, and the degree of success they obtained for their client, this fee is appropriate and fair for the necessary and non-redundant work performed by First Lutheran's attorneys

Accordingly, IT IS HEREBY ORDERED that: First Lutheran's Motion for Attorneys' Fees is GRANTED with the modifications as described in this Order.


Date: June 7, 2019                            *s/ Katherine Menendez*
                                               Katherine Menendez
                                               United States Magistrate Judge